## FELICIANO GARZA *v.* THE STATE.

1. EXPRESS MALICE.— See the opinion in this case for facts held suffi-
   cient to show express malice, and, consequently, had death ensued,
   murder.  See, also, rules applicable to cases of sudden killing in the
   absence of previous ill-feeling, etc.
2. SAME.— CHARGE OF THE COURT in a trial for murder, or assault with
   intent to murder, is deficient if it fails to define malice.
3. SAME — PRACTICE IN THE COURT OF APPEALS.— This court will not
   review instructions complained of, when the accused has reserved
   no bill of exceptions thereto, nor asked any charge upon the issues
   in controversy.
4. SAME — EVIDENCE.— Acts or admissions or other language of the
   prisoner, even after the mortal stroke or killing, may often be perti-
   nent as evidence to show malice.  The bill of exceptions in this
   case does not present the objection to the admission of the declara-
   tions of the defendant in such manner that they can be held irrel-
   evant.

APPEAL from the District Court of Webb.  Tried be-
low before the Hon. F. E. MACMANUS, Special Judge.

The opinion recites, in substance, the evidence for the
State upon which the conviction in this case was had, ex-
cept that the defendant, according to the testimony of
one witness, denied to him that he participated in the
assault.  The facts stated, however, were testified by
three witnesses.  The punishment assessed was a term
of seven years in the penitentiary.

Gavino Garza testified, for the defense, that he arrived
on the scene after Carlos Ramirez had been knocked
down, and while he was lying on the ground.  The de-
fendant and Stefana Robles, wife of Carlos Ramirez, the
party injured, and who was the main witness for the
State, were standing near the prostrate man, talking.
The woman said to the defendant: "You did it! you did
it!" and the defendant answered, "No madam, it was
not me; you are mistaken; it was the other man who
is to blame, and not me."  The witness asked the de-

fendant who threw Ramirez, and received the answer previously given to the woman.   The defendant also said to the woman: "I don't think your husband will die, but if he does, I will look out for, and take care of you." The defendant had been drinking and riding about all day, and was partly drunk when talking to the woman and the witness.

Manuel Robles testified, for the defense, that as he was crossing the street he saw the defendant, on horseback, and the woman Robles and Ramirez near by.   Ramirez was very drunk, and said to the defendant: "Get down, you cuckold, and I'll cut you to pieces."   The defendant made no reply, but rode off.

*C. A. McLane*, for the appellant.   "The court erred in admitting the testimony of Estefana Robles, as set forth in defendant's first bill of exceptions."

No principle of law is better established than that the *allegata* and *probata* must correspond.   In order to introduce proof showing a repetition of an offense under art. 819, Penal Code, it is an indispensable requisite that the fact of the first conviction, together with its circumstances of time, place and court, should first be alleged. *Long* v. *State*, 36 Texas, 6.

The indictment in this case is blandly innocent of any such allegation.   Under the exhaustive opinion above quoted (the solitary Texas decision upon this question to be found throughout the mass of our Reports), it would clearly appear to be error to admit testimony showing a repetition of the offense in the absence of this prerequisite supporting allegation.   Yet this has been done in this case.   The part of the testimony of Estefana Robles, complained of, tends, though indirectly, yet intelligently and unerringly, to impress the minds of the jury with the fact of a previous conviction in another case.

The defendant, in other words, is presented to the jury

in all the malodorousness of a convict recently returned
from the penitentiary! Instead of the protecting ægis of
a fair and impartial trial — the non-presumption of
guilt — standing over him, he is exhibited before the ar-
biters of his liberty in all the offensive, moral deformity
of a convicted felon, with the stench of his dungeon still
around him!

The words — "Well, I don't care if I do have to go
back to making buckets again," attributed to appellant,
certainly meant something. Taking the proffer of the
State to introduce proof showing, *in effect*, that appellant
was a returned convict, in connection with the admission
of the district attorney himself in his opposition to appel-
lant's motion for a new trial, that the said district attor-
ney did "inform the jury that, as certain testimony which
he had *intended* to offer had been adjudged incompetent,
they would have to draw their own inferences regarding
what was meant by the defendant when he told the wit-
ness, Estefana Robles, that he, defendant, supposed he
would have to go back to making buckets again!" — the
conclusion is irresistibly forced upon the candid mind that
these words had all the telling effect upon the jury that
the tedious and formal process of the proof itself of the
inhibited fact might have had. The court will all the
time bear in mind that the jury did not retire. They
heard all, — the offer of proof, the argument of counsel for
State and prisoner, and the court's ruling. It might be
contended that the appellant should not be heard to com-
plain because the court's ruling was in his favor. Granted,
had it stopped there. But the prejudicial impression
against appellant already initiated in the minds of the
jury, though yet but a spark, was fanned into a flame by
two circumstances: 1st, the subsequent refusal of the
court to verbally instruct the jury not to allow the prof-
fered testimony to influence them against defendant;
2d, the admission of the part of the witness Estefana's

testimony about the buckets, etc., objected to as irrelevant and incompetent. That this testimony did influence the jury is conclusively shown by the excessive verdict they returned. At the worst, the act of defendant could not, under the evidence, have been more than an aggravated assault; and in this, counsel believes he is borne out by the statement of facts, a close inspection of which he respectfully challenges. 7 Texas Ct. App. 627; 4 Texas Ct. App. 417.

The court erred in overruling defendant's motion for a new trial. As several grounds of the motion for a new trial have already been discussed under the first proposition, the remainder only will here be noticed.

The charge nowhere defines or attempts to define malice, either express or implied. It has been repeatedly held by this court that malice is an essential element of murder and must be charged, whether asked or not. *Ewing* v. *State*, 4 Texas Ct. App. 417; *Hodges* v. *State*, 3 Texas Ct. App. 470, and the numerous authorities there cited; *Williams* v. *State*, 3 Texas Ct. App. 316; *Daniels* v. *State*, 4 Texas Ct. App. 429; *Anderson* v. *State*, 1 Texas Ct. App. 730; *Johnson* v. *State*, 4 Texas Ct. App. 598.

The court erred in paragraph 4th of the charge, because its phraseology was calculated to mislead the jury.

"Though a charge to the jury be framed in the language of the Code, yet if it fails to furnish such an exposition of the meaning and intent of the law as the facts require, it is erroneous."

*Riojas* v. *State*, 9 Texas Ct. App. 65; see also *Whaley* v. *State*, Id. 305; *Reed* v. *State*, Id. 317.

It is the absolute province of the court to give the law of the case. The jury has its uninvadable domain in the facts of the case. In its exposition of the law, the court is nothing unless clear.

It is contended that while the 4th paragraph of the charge is good law, and were it dove-tailed with the defi-

nition of malice, might have passed muster, yet as it is there put down, unassisted with anything explanatory of its meaning, it tends more to confuse and mislead the jury than to enlighten.

In *Daniels* v. *State*, 4 Texas Ct. App. 429, the court is very felicitous in marking out the duty of courts in this regard, when it says: "Juries are not presumed to know the law; on the contrary they are bound to receive the law from the court and be governed thereby." Code Cr. Proc. art. 676. The court erred in paragraph 9th of the charge, because the same is not applicable to, nor based upon the state of facts shown, either as to the manner or the means of the assault.

In *Lester* v. *State*, 3 Texas Ct. App. 25, this court uses the following language: "By the law applicable to the case and the 'law of the case,' as employed in the Code (articles 677 and 678, Cr. Proc.), evidently it meant the law applicable to the case as made out by the proofs — the law applicable to the pleadings and the evidence — and this has been the uniform construction given to them by the Supreme Court and by this court."

Paragraph 9th is the keystone of the entire charge, and as such should it not predicate the law upon the facts proven on trial?

It is insisted that this portion of the charge is too general in its terms. An unexceptionable charge in this respect would seek strictly to ask the jury what the particular facts are, and then inform them as to the law they should apply to those facts — should they find them true.

Now, the facts show that the defendant and another, with time and place as alleged, made an assault with a *certain rope*, etc. Should not the court have mentioned the instrument with which the assault is charged to have been made? Is it not as important to mention the character of instrument used as it is to state the time, place, name of injured party, etc. The court merely refers to the

offense as "set forth in the indictment." In thus doing the court cannot be said to have given the law applicable to the evidence as well as the pleadings of the case.

*H. Chilton*, Assistant Attorney General, for the State.

WHITE, P. J.    The circumstances attending the alleged assault with intent to murder, of which crime appellant was convicted, are in brief that Carlos Ramirez and his wife were walking in the middle of the street in the city of Laredo, when this appellant and one Ysabel Ramirez, who were riding on horseback behind them, approached, each having and holding the end of a rope which was swinging down between their horses. Defendant remarked "Let us lasso them." The woman stepped quickly to one side as they dashed forward on their horses. The rope which dangled between the two horsemen struck Carlos Ramirez about the calves of his legs, throwing him high up in the air. As he fell, the woman says in her testimony, "I believe he would have been killed if I hadn't caught his head before he fell, and broke the force of the fall." Dr. Arthur, who was called to see the injured man, testified that "he examined him and found he had received severe bruises, principally about the hip, breast and back; believe the probabilities are he would have been killed had he been sober when he got the fall. Drunken men as a rule escape severe injury from falls. There was also about three inches of sand where he fell, and that helped to save his life."

Now, had death resulted under the above state of facts, would the crime have been murder? We think most clearly so. The well-settled rules are that "in cases of sudden killing in the absence of previous ill-feeling, or where it is too slight to be presumed, there may often be found ample evidence of express malice in the means used and manner of doing it. For a man is always pre-

sumed to intend that which is the necessary or even prob-
able consequences of his acts, unless the contrary appears.
However sudden the killing may be, if the means used
or manner of doing it, or other external circumstances,
indicate a sedate mind, or a formed design to kill or do
great bodily injury, and a murder be committed, it will
be upon express malice. In such case, if it appeared that
the means used were likely to kill or do great bodily harm,
endangering life, and a killing took place, the natural in-
ference would be that it was upon express malice." *Mc-
Coy* v. *State*, 25 Texas, 33. Circumstances of enormity,
cruelty, deliberate malignity, even calm demeanor and
absence of passion, will be sufficient oftentimes to es-
tablish the formed design to take life or do some great
bodily harm.

In the interesting brief of counsel for appellant the
charge of the court to the jury is subjected to stringent
criticism in several particulars. One of the errors thus
pointed out is certainly tenable, and under repeated de-
cisions of this court must be held fatal to the validity of
the judgment of conviction. It nowhere defines or ex-
plains to the jury the meaning of the term malice, which
is used in the definition of, and is the essential ingredient
of all murder. *Hodges* v. *State*, 3 Texas Ct. App. 470;
*Ewing* v. *State*, 4 Texas Ct. App. 417; *Daniels* v. *State*,
4 Texas Ct. App. 429.

In the absence of a bill of exceptions reserved thereto,
and a failure to request instructions more full and com-
prehensive, we cannot say that the other portions of the
charge complained of show such error either of omission
or commission as would require a reversal.

With regard to the only bill of exception, which was
to the statement of defendant made shortly after the in-
fliction of the injury and when he was charged with its
commission, viz.: "Well, I don't care if I do have to go
back to make buckets again," in the manner in which it

is presented in the bill, it cannot be said that the evidence was irrelevant and inadmissible. "Acts and admissions or other language of the prisoner, even after the mortal stroke or killing, may often be pertinent evidence as tending to show malice." *(McCoy v. State, supra.)*

Because of error in the charge of the court, as above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*